Ruetin, Judge
All the cases cited for the defendant, upon the point of eviction, except one, arc those wherd the bargainee was in possession, and fall within the hard, rule, which this court was constrained to adopt in Coble v. Wellborn, (ante 2d vol. 388). The existence of an in-cumbrance, or the mere recovery in a possessory action, under which the bargainee has not actually been disturbed, are held, for technical reasons, not to be breaches of a covenant for quiet possession, or in other words, of our warranties. But that is a very different case from this in which the bargainee never in fact was in possession, but was kept out by the possession of another, under better title, existing at the time of the sale and deed, and ever since. The case of Kortz v. Carpenter is of the same character. But it is distinguishable from the present; for there had been no attempt in that case to get possession. Here there was, by ejectment. - I do. not however think that was necessary ; but the existence of a better title, with an actual possession under it in another, is of itself a breach of the covenant. It is manifestly just, that it should be so considered ; for otherwise the covenantee would have no redress, but by making himself a trespasser by an actual entry, which the law requires of nobody; or by bringing an unnecessary suit: for the event of that suit proves nothing in the action on the covenant. But upon purely legal grounds, it is so. For as between tiie bargainor and bargainee, the latter is in by force of the statute of uses. It is upon that idea, that the legal title is acquired by a deed of bargain and sale. It passes the use, and the statute carries the possession. It is so in the conveyance by lease and release. There must be a possession for the latter to operate on. But it is not an actual possession — at least, the actual entry need not be proved. The statute transfers the possession, and the lessor cannot say it was not actual, for *201 the purpose of defeating his subsequent release. As between the parties then, the bargainee is, on strict principles, in; but if there be in reality an adverse possession, be can only be held to be in for an instant; for there will be no implication against the truth, further than is necessary to make the deed effectual for its purposes. If such adverse possession be upon title para-mout, then there is an eviction of the bargainee eo instan-ti that the possession conferred by the statute takes place: for the eviction need not be by process. Upon general reasoning therefore, I conclude the case is for the plaintiff on this point. But there is a case in the Supreme Court of the United States directly in point. (Duvall v. Craig, 2. Wheat. 45.) This was also one of the questions decided in the famous case of Ricketts v. Dickens in this state, (1 Murph. 343.).
Where the ven-dee is evicted in his life time, an action for this breach of the covenant of quiet enjoyment is properlv hro’t after his death, bv his executor, and does not descend to the heir,
There can be no doubt but Wingfield's possession is co-extensive with his title, ho being in the actual possession of part. He could have maintained trespass for an entry on the wood land. Whatever may be the rule for damages upon an eviction from a' particular estate, after the expiration of a part, this case cannot form an exception to the general rule, because the whole interest was lost, and there was no enjoyment.
The last exception stated in the record is, that the action ought not to have been brought by the executor, hut belongs to the heir. This is contrary to well settled law. The case of Lucy v. Livingston, (2 Lev. 26, and 1 Venir is, 17"5) established, that for a breach in the testator’s time the executor and not the heir is to sue; because as no estate in the land descends to the heir, there is nothing in him, to which the covenant can attach itself; and the demand had become a personal thing in the testator, and so goes to the executor, who represents the the person. The case of Kingdon v. Nottle, ubi supra, has been cited to the contrary. It is to be observed, that it is directly opposed to the cases- of Hamilton v. Wilson, (4 Johns. Rep. 72) and Bennet v. Irwin, (3 Id. 363.) But if it were not, it is distinguishable from the case at bar. This is an action on a covenant for quiet *202 possession, where there has been an eviction and the possession lost in the life-time of the bargainee. Every thing then was gone before either the heir or the executor could claim, except the right in one of them to recover damages — which right for the reasons given in Lucy v. Livingston comes to the personal representative. Kingdon v. Nottle was on covenants of seisin and of a right to convey. It is true, this is. broken as soon as made, if the covenantor had no title.5 and for that reason it would seem that the- executor ought to sue. -And so I should think he certainly ought, if that be the only covenant in the deed, and there be a total defect of title, so that nothing passed under the deed. But if there he other covenants, as for example, for quiet possession, and some estate or interest did pass,- it may make a difference. For the bargainee may choose to keep-the estate, such as it is, and rely upon his title becoming good by matter subsequent, rather than treat his own title as defective, while he is enjoying under it. And where the ancestor has not himself elected to treat his title as bad, but on the contrary to depend on the other covenants, and to let it descend, or devise it as good, it would seem reasonable, that the executor-should not be permitted to interfere with the claims of the heir or devisee, without showing a special damage to the personal estate. This is what I suppose Lord Ellenborough might have meant by saying, the declaration by the executor ought to show some special damage to the testator in his life-time. It then becomes a personal demand to the extent of that damage. But if the testator treats it as an estate in possession, and vrili. not consider the breach of covenant as destructive of his estate, nor give the latter up for the damages which lie-might claim on the former, I do not see that the executor can exercise that power against the heir or devisee, or (for it would go thus far ) even against an alienee. The executor ought not to make that personalty for his own benefit, which the testator disposed of as realty, unless there be no method, by which those who claim it in the latter character could obtain redress for the final loss of the estate. But here, in a case of covenant for quiet *203 possession, broken in the testator’s time, the whole loss is then incurred, and there can be nothing but damages had : and they of course attach to the person.
Where the verdict exceeds the amount of damages laid in the writ, it is fatal in arrest of judgment, unless the plaintiff remit the excess.
But by the acts of 1790 & 1824, (/*■>•• 118, £# 1 .'33,) the plaintiff may in this court amend his writ.
Another objection is taken here, upon the matter appearing in the record. The damages are laid at *§1500; and found in the verdict to be g2334. This is fatal in arrest of judgment, unless the plaintiff be allowed to remit the excess, or unless an amendment can be made by enlarging the sum in the declaration. The plaintiff does not offer to remit, but moves for leave to make the amend, ment. This motion is founded on the acts of 1824 (Rev. c. 1233,) and of 1790. (Rev. c. 818.) Certainly títere is no other foundation for it j for under the English statutes of amendment it has always been held, that there must be something to amend by. But it is plain from the words of the act of 1790, that any thing may be amended at any time, introduced in the latter part of the section, after the enumeration of many particular instances in which amendments should be allowed, that the legislature intended amendments to fee made in the most liberal manner possible. The expressions seem to have been used, in a spirit of impatience at the reluctance of the courts to allow amendments, and as was expressed by Chief-Justice Tavuor, in Grandy v. Sawyer were designed, to overcome the remaining scruples of the courts. In the interpretation of the act there has been a latitude correspondent to its terms. Writs have been amended by striking out defendants; (McClure v. Burton, 1 Law Repos. 472;) and by striking out some plaintiffs,'and inserting another. (Grandy v. Sawyer, 2 Hawks 61.) Declarations have been amended after a special demurrer; (Davis v. Evans, 1 L. Repos. 499,) besides other cases equally striking. In fme, the plaintiff has been permitted, not to amend, but to change his process, and make a new action. But this act is confined to amendments made in the court, in which the action is originally brought; and does not therefore enable a revising court to either disregard the defect, or make the amenndment. To remedy this, the act of 1824 was passed. And the enactment of this last law, after the *204 adjudications on the former, is a legislative declaration of the enlarged construction both ought to receive. By it the Superior Court upon appeal, or writ of error, is-authorized to make any amendments the County Court could; and the Supreme Court is likewise directed to make them in the same manner as they could have been made in either of those courts ; and this “ from time to time/’ and “ at any time, in anythingThere is therefore no restraint upon this court but its own discretion, and such as grows necessarily out of the nature of its jurisdiction. The words are as broad they can be; but they must be construed in reference to the subject matter. The court is bound to make every amendment, which would he of course in the inferior court, and which does not involve the merits. But plainly the act does not contemplate any amendment to he ordered by this court to be made elsewhere ; nor any to be made in this court, but such as may be necessary to support the judgment below, on a verdict on the merits. We cannot make an amendment then after judgment, which would leave it at large, whether the verdict was upon the merits of the case as amended ; nor one which necessarily, or by the equity of the court would let in a new plea or replication. For that would not be an amendment in support of what had been done ; but one on which the judgment rendered must he reversed, and the parties sent-.to a new trial. The object of the act, in reference to this court, is to avoid that. Upon an appeal in the Superior Court it is different; because the cause is there to be tried de novo, and the verdict in the County Court is annulled by the appeal. The whole merits are there open, and the Superior Court, from the nature of its functions, may amend any thing upon terms. The amendment now moved for does not require repleading, nor admit of it. It is not of a kind, which- changes the merits as tried, but is made necessary by those merits as found. It hurts nobody hut the plaintiff, who discharges the bail, and loses his costs thereby. There is no possibility of its doing an injury to the defendant, by making him pay more money than he owes, or sooner than he ought, namely, before it is *205 ,due. Why then send the parties to renew their litigation ? The acts, in permitting us to avoid that necessity, forbid us from imposing it on the parties. And here I must qualify the expression, which dropt from me in Dowell v. Vannoy, (ante 43,) on this subject, when I was not aware of the very strong terms used by the legislature. Probably in that case, I mean a verdict defective only in form by the misprision of the clerk; and where the substance is intelligible, an amendment would be allowed here, as it would be of course in the Superior Court. I think for these reasons we are bound to amend here, as prayed for.
*204 By the act of 1824, this court is bound to permit amendments which would be ^of course in the .courtbelow; but it is not authorized to direct them to be made in the court below, nor to make any but such as are necessary to support the judg ment of the Superior Court.
None can be permitted here, which would affect tlie judgment below, or upon which ordinarily a new plea is admitted.
*205 Notwithstanding the dictum in Dowell v. Van-noy, (ante 43,0 verdicts which, are defective in form, from the misprision of the clerk, will be corrected in this court, if the substance is intelligible.
Defects which require an actual amendmeni, and which are not cured by the statutes of jeofail can he amended only upon the payment of all costs. And where the aiu’nt of damages laid in the writ was increased, the amendment was permitted upon these terms, HEXDEB.S05T, C. J. dissentiente.
The terms, I think, must be upon the payment of all the costs. The general rule is, that where the defect is not one that is cured by the statutes oí jeofail, but which requires an actual amendment, .the party who ,asks it must pay all the costs to that time ; unless it be the fault of the officer, and not of the party. This is emphatically applicable to cases where the action is changed,-; in which the plaintiff by his own admission could make no recovery, and would be compelled to pay all the costs, if prosecuted to a final decision. It is equally applicable to a case, where there can be ho judgment for debt or costs,, unless the amendment he made — as here. The plaintiff gets more than he asked, and he must pay the expense, upon which the gain is founded. The rule is based on two grounds. The one, of duty to the particular party who is defendant, who has a right to ask that the plaintiff shall not enlarge or change his demand, without paying liim his costs incurred in defending the former one : the other, of a duty to the profession and the country, which enjoins it on the court not to encourage ignorance or negligence, by giving them all the advantages of knowledge and diligence. The amendment is allowed therefore, upon the payment of all the costs, including those of this court; and upon the record as amended, the judgment is affirmed, except as to the costs.